16 658
45 153
16 658
f47 233
16 658
57 355
16 658
58 671
16 658
j 59 529
16 658
f65 438

## Barber v. F. & M. Insurance Co. of Wheeling.

Decided May 1, 1880.

1880
Special Term.

Barber
v.
F. & M. Ins. Co.
of Wheeling.

1. Where the defendant relies upon the contract limitation, as to the time within which suit shall be brought, in an insurance policy, in defeasance of the action, the practice is to plead it, and not to take advantage of it by demurrer.

2. Where the question of the contract limitation contained in an insurance policy is not presented to the court by the pleadings, it is error for the court to instruct the jury as to the legal effect of such a clause.

3. In the construction of contracts all the provisions thereof shall be taken into consideration and reconciled if possible, so that the true intent of the parties to the contract may be ascertained.

4. Where a condition in a policy of insurance provides for an *indefinite* period to elapse, before suit shall be brought on the policy, and that no suit shall be brought, until the thing so provided for is done, to accomplish which may take more than six months without the fault of either of the parties to the contract, and the condition further provides, that no suit on the policy shall be maintained, unless commenced within six months next after the loss shall occur, the intent of the parties to the contract was, that the six months limitation should commence to run, when the cause of action accrued, and not before.

*Supersedeas* to an order of the municipal court of Wheeling rendered on the 27th day of December, 1877, in an action of *assumpsit*, in said court then pending, wherein Matthew Barber was plaintiff and The Fire and Marine Insurance Company of Wheeling was defendant, allowed upon the petition of said defendant.

Hon. Gibson L. Cranmer, judge of the municipal court of Wheeling, rendered the order complained of.

MOORE, JUDGE, furnishes the following statement of the case:

Matthew Barber, on the 8th day of September, 1875, sued out of the clerk's office of the municipal court of Wheeling, a writ in an action of trespass on the case in assumpsit, against the president and directors of the Fire and Marine Insurance Company of Wheeling, laying the damages at $1,500.00. On the second Monday in November, 1875, plaintiff filed his declaration at rules. On the 11th day of September, 1876, at a session of said court, came the parties by their attorneys, and on motion of the plaintiff, by his attorney, the case was remanded to rules, to file an amended declaration therein, which amended declaration was filed the second Monday in September, 1876. The suit was brought on a policy of insurance, dated June 5, 1874, made by the defendant in favor of the plaintiff, insuring certain property of the plaintiff, situated in Oxford, Butler county, Ohio, from the 5th day of June 1874, at twelve o'clock at noon, to the 5th day of June, 1875, at twelve o'clock at noon. The declaration alleges that the property insured was lost or damaged by fire, January 11, 1875. On the second Monday in October, 1876, at rules, came the defendant and demurred generally to the amended declaration, and pleaded *non assumpsit,* and filed the two following special pleas in writing, viz:

"And for a further and second plea in this behalf to the plaintiff's amended declaration, the defendant says, that it was in and by the policy of insurance in the said amended declaration mentioned, expressly provided and mutually agreed between the plaintiff and defendant, that no suit or action against this defendant for the recovery of any claim by virtue of the said policy, should be sustainable in any court of law or chancery, unless such suit or action should be commenced within six months next

1880 Special Term.

Barber v. F. & M. Ins. Co. of Wheeling.

after the loss should occur; and should any suit or action be commenced against the defendant after the expiration of the aforesaid six months, the lapse of time should be taken and deemed as conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding.

"And defendant avers that this action was not commenced until the expiration of the six months next after the loss mentioned in the plaintiff's amended declaration occurred. That the said loss occurred on the 11th day of January, 1875, and that this suit was commenced on the 8th day of September, 1875, and this the said defendant is ready to verify; therefore the said defendant prays judgment if the said plaintiff ought to have or maintain his aforesaid action against it.

"And for a further and third plea in this behalf to said amended declaration, the defendant says that in and by the terms of the policy of insurance in the plaintiff's amended declaration mentioned, the said defendant agreed to make good unto the said plaintiff, his executors, administrators and assigns, all such immediate loss or damage, not exceeding in amount the sum or sums insured as specified in said policy, nor the interest of the assured in the property, except as in said policy provided, as should happen by fire to the property specified in the said policy of insurance, from the 5th day of June 1874, at twelve o'clock at noon, to the 5th day of June 1875, at twelve o'clock at noon; the amount of the loss or damage to be estimated according to the actual cash value of the property at the time of the loss, and to be paid sixty days after due notice and proof of the same should have been made by the plaintiff, and received at the defendant's office in the city of Wheeling, in the State of West Virginia, in accordance with the terms and provisions of said policy, unless the property should be replaced, or the defendant company should have given notice of their intention to rebuild or repair the damaged premises.

"And the defendant further avers, that a loss by fire is alleged in the plaintiff's amended declaration, to have happened to said property in said policy mentioned, on the 11th day of January, 1875, of which loss it is in said amended declaration alleged, the plaintiff forthwith gave notice to the defendant, and of which loss proofs are alleged in said amended declaration to have been delivered to the defendant by the said plaintiff, and received by defendant at its office, on the 1st day of February, 1875. The defendant further avers, that it was in and by the policy of insurance in the said amended declaration mentioned expressly provided and mutually agreed between the plaintiff and defendant, that no suit or action against this defendant for the recovery of any claim by virtue of the said policy, should be sustainable in any court of law or chancery, unless such suit or action should be commenced within six months next after the loss should occur, and should any suit or action be commenced against the defendant after the expiration of the aforesaid six months, the lapse of time should be taken and deemed as conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding. And defendant avers that this action was not commenced until after the expiration of the six months next after the loss by fire mentioned in the amended declaration occurred. And this the said defendant is ready to verify, therefore the said defendant prays judgment, if the said plaintiff ought to have or maintain his aforesaid action against it."

On the second Monday in May, 1877, at rules, the plaintiff joined in the demurrer to the amended declaration, and demurred generally to the said two special pleas in which the defendant joined. The court at its session, May 25, 1877, overruled the demurrer to the amended declaration and sustained the demurrer to the said two special pleas. On the 4th day of June, 1877, defendant filed the three following special pleas, viz :

" And for a further and fourth plea in this behalf to

the plaintiff's amended declaration, the defendant says that it was in and by the policy of insurance, in the said amended declaration mentioned, stipulated that if after the making and delivery of said policy, during the time in which if a loss occurred by fire to the property insured by said policy, then defendant was bound then to indemnify the plaintiff for such loss to the extent and according to the terms mentioned in said policy; if the premises, the two-story frame building mentioned therein, should be occupied or used so as to increase the risk assumed by the defendant by said policy, that the said policy should then be void. And the defendant avers that at the time when the said policy was made and delivered, the said building was occupied and used as a wagon, buggy, carriage and agricultural implement manufactory; that after said time and before the fire mentioned in the said amended declaration, and within the time during which the defendant was bound by said policy to indemnify the plaintiff as aforesaid, if a loss occurred by fire to the property insured in said policy, but with the stipulation among others that the said policy should be void, if the said risk was increased as aforesaid; the said frame building was occupied and used with the consent of the assured, the plaintiff, Matthew Barber, as such manufactory as aforesaid and also as an organ manufactory, to wit: From the —— day of September, A. D. 1874, until the fire in said amended declaration mentioned; that by reason of the said building being occupied and used as such manufactory as first aforesaid, and as an organ manufactory as aforesaid at the same time as aforesaid it was occupied and used so as to increase, after the making and delivery of said policy and before the said fire, the risk assumed by the defendant in the said policy, and that the said policy became void at the time the said risk was so increased, to wit: On the —— day of September, A. D. 1874, and that the said policy continued to be void from that time until and at the time of the said fire, and was void when said fire occurred. And

this the said defendant is ready to verify. Wherefore the said defendant prays judgment if the said plaintiff ought to have or maintain his aforesaid action against it.

"And for a further and fifth plea in this behalf, to the plaintiff's amended declaration, the defendant says that it was in and by the policy of the insurance in the said amended declaration mentioned, stipulated that if, after making and delivery of said policy, during the time in which, if a loss occurred by fire to the property insured in said policy, the defendant was bound thereby to indemnify the plaintiff for such loss to the extent and according to the terms mentioned in said policy, the premises, the two-story frame building therein mentioned, should be occupied so as to increase the risk assumed by the defendant by the said policy, that the policy should then be void.

"And the defendant avers that at the time when the said policy was made and delivered, the said building was occupied as a wagon, buggy, carriage and agricultural implement manufactory; that after the said time, and before the fire mentioned in the said amended declaration, and within the time during which the defendant was bound by the said policy to indemnify the plaintiff as aforesaid, if a loss occurred by fire to the property insured in said policy, but with the stipulation, among others, that the said policy should be void if the said risk was increased as aforesaid, the said frame building was occupied with the consent of the assured, the plaintiff, Matthew Barber, as such manufactory as aforesaid, and also as an organ manufactory, to wit: from the —— day of September, A. D. 1874, until the fire in said amended declaration mentioned; that by reason of said building being occupied as such manufactory as first aforesaid, and as an organ manufactory as aforesaid, at the same time as aforesaid, it was occupied so as to increase, after the making and delivery of said policy, and before the said fire, the risk assumed by the defendant in the said policy, and that the said policy became void at

1880 Special Term.

Barber v. F. & M. Ins. Co. of Wheeling.

the time the said risk was so increased, to wit: on the —— day of September, A. D. 1874, and that the said policy continued to be void from that time until and at the time of the said fire, and was void when said fire occurred. And this the said defendant is ready to verify. Therefore the said defendant prays judgment if the plaintiff ought to have or maintain his aforesaid action against it.

"And for a further and sixth plea in this behalf, to the plaintiff's amended declaration, the defendant says, that it was in and by the policy of insurance, in the said amended declaration mentioned, stipulated that if, after the making and delivery of said policy, during the time in which, if a loss occurred by fire to the property insured by said policy, the defendant was bound thereby to indemnify the plaintiff for such loss to the extent, and according to the terms, mentionend in said policy, the premises, the two-story frame building therein mentioned, should be used so as to increase the risk assumed by the defendant by the said policy, that the policy should then be void. And the defendant avers, that at the time the said policy was made and delivered, the said building was used as a wagon, buggy, carriage and agricultural implement manufactory; that after said time, and before the fire mentioned in said amended declaration, and within the time during which the defendant was bound by the said policy to indemnify the plaintiff as aforesaid, if a loss occurred by fire to the property insured in the said policy, but with the stipulation, among others, that the said policy should be void if the risk was increased as aforesaid, the said frame building, with the consent of the assured, the plaintiff, Matthew Barber, was used as such manufactory as aforesaid, and also as an organ manufactory, to wit: from the — day of September, A. D. 1874, until the fire in said amended declaration mentioned; that by reason of said building being used as such manufactory, as first aforesaid, and as an organ manufactory as aforesaid at the same time, as

aforesaid, it was used so as to increase, after the making and delivery of said policy and before the said fire, the risk assumed by said defendant in said policy, and that the said policy became void at the time the said risk was so increased, to wit: on the — day of September, A. D. 1874; and that the said policy continued to be void from that time until and at the time of said fire, and was void when said fire occurred. And this the said defendant is ready to verify. Therefore, the said defendant prays judgment, if the said plaintiff ought to have or maintain his aforesaid action against it."

The plaintiff objected to the filing of these pleas, the court overruled the objection and permitted the pleas to be filed; plaintiff then demurred to them, but the court on the 18th day of June, 1877, overruled the demurrers, and thereupon the plaintiff filed three replications in writing to the defendant's said fourth plea, upon the first of which the defendant joined issue, and demurred to the second and third; the court overruled the demurrer to the second replication, and the defendant rejoined generally to that replication and issue was joined; and the court sustained the demurrer to the third replication; at the same time the plaintiff filed two replications to defendant's fifth plea, upon the first of which the defendant joined issue, and demurred to the second, which demurrer the court overruled, and the defendant then rejoined generally to said replication and issue was joined; at the same time the plaintiff filed two replications in writing to the sixth plea, upon the first of which defendant joined issue and demurred to the second, which demurrer was overruled and thereupon defendant rejoined generally and issue was joined.

The replications are as follows:

"And now comes the plaintiff, and for a replication to the defendant's fourth plea, says: That after the making and delivery of the said policy of insurance, in the said plea mentioned, and between that time and the occurring of the fire, therein also mentioned, the premises,

1880 Special Term.
Barber v. F. & M. Ins. Co. of Wheeling.

to wit: the two-story frame building, mentioned in said policy, were not used or occupied so as to increase the risk assumed by the said defendant, by means of the making and delivery of said policy. And of this he puts himself upon the country." Defendant joined issue.

*Second Replication to the Fourth Plea.*

"And for a further and second replication to the said defendant's fourth plea, the said plaintiff says: that after the making and delivery of the said policy of insurance by the said defendant, as is in the declaration set forth, and between that time and the occurring of the fire, in said last mentioned plea referred to, the said premises, to wit: the said two-story frame building, mentioned in said policy, were not occupied or used so as to increase the risk assumed by the said defendant, by the making and delivery of the said policy, otherwise than by occupying and using the said premises in part as an organ manufactory, as is in the said last mentioned plea alleged, and the said plaintiff says, that at and before the time when the said premises were so used and occupied in part as an organ manufactory, as aforesaid, to wit: on the 1st day of January, A. D. 1875, at the said city of Wheeling, the said defendant had notice that the said premises would thereafter be used and occupied in part as an organ manufactory as aforesaid, and the said defendant then and there, to wit: On the day and year last aforesaid, at the said city, consented and agreed that said premises might be thereafter used and occupied in part as an organ manufactory, as aforesaid. And this the said plaintiff is ready to verify." Defendant demurred, demurrer overruled, and issue joined.

*Third Replication to the Fourth Plea to which the Court sustained the Demurrer.*

"And the said plaintiff, for a further and third replication to the said last mentioned plea, says: that in the said policy of insurance, therein mentioned, it was agreed and provided, as in the said last mentioned plea set forth,

that if, after the making and delivery of the said policy, and before the loss thereby contemplated should occur, the premises therein mentioned should be occupied and used, so as to increase the risk assumed by the said defendant, the policy should be void; and the said plaintiff says, that the said last mentioned provision was and is, by the terms of the said policy, subject to this further provision contained in the said policy, to wit: that if the said premises should be occupied or used during the period aforesaid, so as to increase the said risk, yet, that the said policy should not thereby become void, unless the said premises should so remain for more than thirty days without notice to and consent of the said defendant in writing, and the said plaintiff says, that the said premises were not occupied or used during the period aforesaid, so as to increase the said risk, except in so far as they were occupied and used in part as an organ manufactory, as in the said plea is alleged; and the said plaintiff says, that the said premises were not occupied or used, in whole or in part, as an organ manufactory as aforesaid, for as great a length of time as thirty days. And this the said plaintiff is ready to verify."

*First Replication to Fifth Plea.*

"And now comes the plaintiff, and for a replication to the said defendant's fifth plea says, that after the making and delivery of the said policy of insurance in the said plea mentioned, and between that time and the occurring of the fire therein also mentioned, the premises, to-wit: the two-story frame building mentioned in said policy, were not used or occupied so as to increase the risk assumed by the said defendant, by means of the making and delivery of said policy, and of this he puts himself upon the country."

*Second Replication to the Fifth Plea to which Defendant Demurred, Demurrer Overruled and Issue Joined.*

" And for a further and second replication to the said defendant's said fifth plea, the said plaintiff says, that

after the making and delivery of the said policy of insurance by the said defendant as in the declaration set forth, and between that time and the occurring of the fire in said last mentioned plea referred to, the said premises, to wit: the said two-story frame building mentioned in said policy, were not occupied or used so as to increase the risk assumed by the said defendant, by the making and delivery of the said policy, otherwise than by occupying and using the said premises in part as an organ manufactory, as in the said last mentioned plea alleged. And the said plaintiff says, that at and before the time when the said premises were so used and occupied in part as an organ manufactory, as aforesaid, to wit: on the first day of January, A. D. 1875, at the said city of Wheeling, the said defendant had notice that the said premises would thereafter be used and occupied in part as an organ manufactory as aforesaid and the said defendant then and there, to wit: on the day and year last aforesaid, at the said city, consented and agreed that the said premises might be thereafter used and occupied in part as an organ manufactory as aforesaid. And this the said plaintiff is ready to verify."

*First Replication to Sixth Plea.*

"And now comes the plaintiff, and for a replication to the said defendant's sixth plea, says, that after the making and delivery of the said policy of insurance in the said plea mentioned, and between that time and the occurring of the fire therein also mentioned, the premises, to wit: the two-story frame building mentioned in said policy, were not used or occupied so as to increase the risk assumed by the said defendant by means of the making and delivery of said policy, and of this he puts himself upon the country." Issue joined thereon.

*Second Replication to the Sixth Plea, the Demurrer to which was Overruled, and Issue thereon Joined.*

"And for a further and second replication to the defendant's said sixth plea, the said plaintiff says, that after

the making and delivery of the said policy of insurance by the said defendant, as in the declaration set forth, and between that time and the occurring of the fire in said last mentioned plea referred to, the said premises, to wit: the said two-story frame building mentioned in said policy, were not occupied or used so as to increase the risk as assumed by the said defendant by the making and delivery of the said policy, otherwise than by occupying and using the said premises in part as an organ manufactory, as is in the said last mentioned plea alleged, and the said plaintiff says, that at and before the time when the said premises were so used and occupied in part as an organ manufactory as aforesaid, to wit: on the first day of January, A. D. 1875, at the said city of Wheeling, the said defendant had notice that the said premises would thereafter be used and occupied in part as an organ manufactory as aforesaid, and the said plaintiff then and there, to wit: on the day and year last aforesaid, at the said city, consented and agreed that the said premises might be thereafter used and occupied in part as an organ manufactory as aforesaid, and this the said plaintiff is ready to verify."

The case was submitted to a jury, and on June 23, 1877, the jury found a verdict for the defendant. Plaintiff moved the court to set aside the verdict and grant him a new trial. The court took time to consider, and on the 27th day of December, 1877, it ordered the verdict to be set aside and granted a new trial upon plaintiff paying the costs of former trial; to which judgment and ruling of the court, setting aside the verdict and granting a new trial, the defendant excepted, and tendered its bill of exceptions to the court, which was in due form made a part of the record; and the plaintiff excepted to so much of the judgment as required him to pay the costs of the trial which had been had.

The bill of exceptions sets out the facts proven, but being very lengthy, it will not be set out in this statement, as all that is necessary for the purposes of the case

is stated in the opinion. The defendant company obtained a *supersedeas* to the judgment of the municipal court April 20, 1878. The petition assigns the following grounds of error:

First—That the said municipal court overruled the demurrer of the defendant to the plaintiff's amended declaration.

Second—That the court erred in sustaining the plaintiff's demurrer to the second plea of the defendant.

Third—That the court erred in sustaining the plaintiff's demurrer to the third plea of the defendant.

Fourth—That the court erred in setting aside the verdict and granting a new trial, when it should have rendered judgment on the verdict in favor of the defendant.

*Caldwell & Caldwell*, for plaintiff in error, cited the following authorities:

8 W. Va. 474; 3 Rob New Pr. 610; 6 W. Va. 425; 39 N. Y. 45; 18 Am. Rep. 386; *Id.* 47; May Ins. § 173; *Id.* § 478 and cases cited; 17 Gratt. 145; Greenl. Ev. § 278; 14 N. Y. 253; *Kerchenmeister* v. *Brewers' Ins. Co.*, Ins. Law Jour. Oct., 1875, p. 799; *Id.* Sept., 1877, p. 699; *Id.* July, 1878, p. 529; 13 Wall. 161; 123 Mass. 380; 1 Allen 136; Flanders Ins. 533 and cases cited; May Ins. 469; 51 Ill. 342; 11 Kan. 93; Ins. Law Jour. July, 1878, p. 555; 11 Johns. 260; May Ins. 580; 105 Mass. 301; 1 Greenl. Ev. § 435; 3 Phill. Ev. (3d ed. 1850) 722; May Ins. § 138; 63 N. Y. 534; 5 Reporter No. 9, p. 283; 62 N. Y. 47; 3 Allen 215; 4 Allen 116; Barton Law Pr. 254; 27 Gratt. 442.

*Henry M. Russell*, for defendant in error, relied on the following authorities:

7 W. Va. 18; 9 W. Va. 382; 13 W. Va. 392; 2 Hill (N. Y.) 478; 1 Chitt. Pl. (14 Am. ed.) 479; 1 Saund. 283; 7 Wall. 391; 21 Minn. 85; 6 W. Va. 425; 39 N. Y. 45; 14 N. Y. 253; 5 M. & W. 475; Welsb. H. & Gord. 345; May Ins. § 507; 8 W. Va. 606; 105 Mass. 298; 21 Pick. 162; 5 B. & Ad. 840; 10 B. & C. 527;

7 Wend. 72; 45 Me. 168; 19 Gratt. 365; May Ins. §§ 219, 231; 22 Conn. 575; 5 Hill (N. Y.) 101.

MOORE, JUDGE, delivered the opinion of the Court:

The defendant's demurrer to the declaration, being general, and nothing appearing in the record, nor in the assignment of errors in the appellant's petition for *supersedeas* to show what was the real ground of demurrer, we are left to take what was said in the argument of appellant's attorneys before us, to be the only ground upon which the demurrer was made. They say, "the plaintiff, as required by *Simmons* v. *Insurance Company*, 8 W. Va. 474, set forth in his declaration all the provisions of the policy qualifying the defendant's liability, or exempting him therefrom. Under No. 12, he inserted the provision, that suit must be brought within six months after the loss shall occur. Yet the writ shows the suit was not brought until after the expiration of said six months, and no waiver or excuse is alleged. The declaration thus set forth no case on which a recovery could be had." Thus it appears the defendant aimed to take advantage of the contract limitation, to bar the suit, by demurrer instead of by plea.

It was held in the case of *Simmons* cited, that "Matter in defeasance of the plaintiff's action need not be stated in the declaration; wherever there is a circumstance, the omission of which is to defeat the plaintiff's right of action, *prima facie* well founded, whether called by the name of a proviso, or a condition subsequent, it must, in its nature, be a matter of defence, and ought to be shown in the pleading, by the opposite party. It is sufficient to state in the declaration those parts of the contract whereof a breach is complained of; or in other words, to show so much of the terms beneficial to the plaintiff in a contract as constitutes the point for the failure of which he sues; and it is not necessary, or proper, to set out in the declaration other points, not qualifying or varying in any respect the material parts

1880 Special Term.

Barber v. F. & M. Ins. Co. of Wheeling.

above mentioned. But if the defendant's promise, or engagement, whether it be verbal or in writing, or under seal, embody, or contain, *as part of it, an exception or proviso,* which qualifies his liability; or in certain instances renders him altogether irresponsible, so that he was not in law *absolutely* bound, the declaration must notice the exception, or proviso, or there will be a fatal variance; but it is not necessary to negative such exception or proviso by an averment in the declaration. Where, however, the proviso in a written instrument, is distinct from and not even referred to by the clause on which the debt is charged, it is considered matter in defeasance, &c., which ought to come from the other side, and then it need not be set forth by the plaintiff. It is also a general rule of pleading, that matter which should come more properly from the other side need not be stated."

It was proper for the declaration to notice this contract limitation; because being an engagment of the defendant and plaintiff embodied in the contract of insurance, as a part of it, which in certain instances would render the defendant not liable under the contract of insurance, so that he would not *absolutely* be bound in law if the declaration did not notice it, it would have been a fatal variance; and hence comes the principle, that, although it is essential to notice in the declaration such a provision in the policy, to prevent a fatal variance, it is not necessary to negative such a provision by an averment in the declaration. Such a provision in an insurance policy is matter merely in defeasance, of which the defendant may or may not be able to avail himself, as it may or may not have been waived by him, and therefore, if he wishes to avail himself of it, he should plead it, and then the plaintiff could reply the waiver, or other matters that tended to defeat the plea. The case of *Young* v. *Rummel,* 2 Hill (N. Y.) 478 and 1 Chit. Pl. (14 Am. ed.) 479 and 1 Saunders 283, instead of antagonizing this rule, come, I think, clearly within the principle. In

Syllabus 1.

nearly all the reported cases of actions upon similar insurance contracts, where the defendant has relied upon the contract limitation in defeasance of the action, the the practice has been to plead it. Hence it should now be held as the established practice that such matter being in defeasance or bar of the action, should be presented by plea and not by demurrer. Therefore, the court did not err in overruling the demurrer to the declaration. Whether the court erred or not in sustaining the demurrer to the second and third pleas, setting up the contract limitation, it is plain that after those pleas had been held to be insufficient, the question of the contract limitation contained in the insurance policy, was no longer presented to the court by the pleadings, and the defendant was not entitled to have the court to instruct the jury upon that point, as to the legal effect of such a clause. The case was before the jury only upon the general issue, and the issue joined as to "*increased risk;*" yet the court, upon this state of the pleading, gave the following instructions:

Syllabus 2.

"9. If the jury believe from the evidence that the letter in evidence dated January 18, 1875, was shown to the plaintiff as testified by Landis before January 26, 1875, and that this suit was begun September 8, 1875, then the jury should find for the defendant.

"10. If the jury believe all the evidence favorable to the plaintiff in this case, yet if the jury further believe that this action was not brought till more than six months after the letter of January 18, 1875, in evidence was shown to the plaintiff as testified, and that said letter was written by C. H. Collier authorized to do so by the defendant company, then the jury should find a verdict for the defendant.

"11. The twelfth section of the policy in evidence providing that 'it is furthermore expressly provided and mutually agreed, that no suit or action against this company, for the recovery of any claim by virtue of this policy, shall be sustainable in any court of law or chancery,

unless such suit or action shall be commenced within six months next after the loss shall occur; and shall any suit or action be commenced against this company after the expiration of the aforesaid six months, the lapse of time shall be taken and deemed as conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding, is a part of the contract sued upon, and is valid and binding."

If, I am right as to the proper practice, that the contract limitation should be pleaded, then it is plain, that the defendant having failed in his attempt to plead it, it was not proper for the court to instruct the jury as it did by these instructions. As the court may have misled the jury by those improper instructions, and thus induced the verdict it rendered, it was, for that alone, rightful in the court to set aside the verdict and grant a new trial.

Our statute regulating appeals, &c., from an order granting a new trial, says: "In any case where there is an order granting a new trial or rehearing; and in such cases an appeal may be obtained from the order without waiting for the new trial or rehearing to be had." What the Appellate Court is to take into consideration upon such an appeal, to determine whether or not the new trial should have been granted, must depend upon the peculiar circumstances of each case. Mr. Russell says in his argument, that "The order granting a new trial is an interlocutory order from which an appeal would not lie at common law, and the words of the statute are: 'An appeal may be obtained *from the order.*' Nothing in the statute," he says, "makes it proper for this court to look further than the order itself, and I think there is reason why it should not do so." It seems to me Mr. Russell's view restricts the Appellate Court too closely. The court must look into the record of the proceedings sufficiently to see whether, under the circumstances of the case, it was right to grant a new trial. But in considering that question, I do not understand that the Appellate

Court is required to consider every point that would, under the statute, be necessary for it to consider if the case was presented upon a final judgment. Taking this view of the manner in which the question should have been considered, I have, perhaps, already gone sufficiently far in this case; but as the case will have to be remanded to the municipal court for a new trial to be had therein, it is deemed proper to consider the instructions given as to the legal effect of the twelfth condition of the policy. The majority of the Court is of opinion that the said instruction does not correctly propound the law, though I think it does. The opinion of the majority on this point, as prepared by Judge Johnson is as follows:

JOHNSON, J.—But one decision, as far as we have been able to find, supports the said instruction as expounding the law correctly, that is *W. S. Johnson et al.* v. *Humbolt Ins. Co.*, decided by the Supreme Court of Illinois in June, 1878. We cannot approve that decision. The opinion of the court in that case, as we think, loses sight of the fundamental principle in the construction of contracts, that all the provisions shall be taken into consideration, and reconciled, if possible, so that the true intent of the parties to the contract may be ascertained.

Syllabus 3.

In the contract sued on in that case appeared two clauses, apparently in conflict, and the same precisely as appear in the case at bar; the one, that no suit could be maintained upon the policy, until arbitrators had fixed the amount of the loss, and the other that no suit could be maintained, unless the action was brought within six months next after the loss should occur. It is plain, that, if these clauses be construed separately, and effect given to each literally, it might be no suit at all could be maintained upon the policy; and this would result from the language used in the policy itself.

In this Illinois case the court construed the clauses separately without any reference to each other, and held

that the plaintiff by the plain language he had used in his contract was barred. We take it to be well settled, that, if a clause in a contract declares that for a breach of the contract no action can be maintained and no remedy had, such a clause is absolutely void, as against public policy. But courts will give effect to every provision of a contract, if it can be done, and will not hold that the parties intended by their contract to violate the law, if it is possible by looking to all the provisions of the contract to avoid that conclusion.

In *Mayor &c. of New York* v. *The Hamilton Fire Insurance Co.*, 39 N. Y. 45, the tenth condition of the policy provided among other things as follows: "And it is hereby expressly agreed, that no suit or action of any kind against said company for the recovery of any claim upon, under or by virtue of this policy shall be sustainable in any court of law, unless such suit or claim shall be commenced within the term of six months after any loss or damage shall accrue," &c. The former part of the condition immediately preceding is: "in case of any loss or damage to the property insured, it shall be optional with the company to replace the articles lost, or to rebuild or repair the buildings within a reasonable time, giving notice of their intention to do so within thirty days after having received the preliminary proofs of loss required by the ninth article of these conditions." The eleventh article provided, that "payment of loss should be made in sixty days from the date of the preliminary proofs of loss by the parties." The defendant insisted that the suit was barred, as suit was not commenced within six months of the loss of the property. Hunt, Judge, in delivering the opinion of the court said: "The counsel for the appellants insist, that the word 'adjustment' is inacurately used in this connection, that it is only appropriate in the settlement of marine losses, and then not by means of the action of parties themselves. This is not impossible. In the preceding section, when it is said, that 'unless such suit or claim

shall be commenced within the term of six months after any loss or damage shall accrue,' the words 'loss or damage' are not used with legal precision. 'Within six months after the right of action shall have accrued' was no doubt what the parties intended. That construction would cast off five years and six months of the right to sue as given by law; and to hold that it extended, as much farther as the right to serve and object to preliminary proofs might require, with sixty days added to that, would require of the sufferer very prompt action indeed, to enable him to receive any benefit from his policy.

"But the condition gives the company sixty days from the date of 'the adjustment of the preliminary proofs of loss by the parties' before the loss is payable. To 'adjust' in its fair meaning is to settle, or bring to a satisfactory state, so that parties are agreed in the result (Webster). * * * If they do not agree, it can hardly be termed an adjustment by the parties, although the law may itself determine the sufficiency of such proofs. In the present case the parties had not adjusted the proofs so recently as the 12th of February, 1859, when additional proofs were served, and possibly not as late as the 18th of that month, when the defendants made a demand of still further proofs. I infer, that the plaintiffs relied upon their last proofs as sufficient, and refused to furnish any other, as the case contains no evidence of any further action in that respect. If however, we fix the time when the preliminary proofs were complete, as on the 12th day of February, 1859, the defendants were under no obligation to pay, and no suit could successfully be commenced against them, until sixty days from that date.

"This is the period in my judgment, at which the claim or right to sue became forfeited against the company. At the end of these sixty days the period of six months commences to run. This I understand to be the necessary result of the reasoning of Judge Wright in *Ames* v. *The Union Ins. Co.*, 14 N. Y. 253."

See Judge Paull's opinion in *McFarland and Steele* v. *The Peabody Ins. Co.*, 6 W. Va. 431; *Killips* v. *Putnam Fire Ins. Co.*, 28 Wis. 484.

In *Stout v. The City Fire Ins. Co. of New Haven*, 12 Ia. 371, the condition in the policy, was similar to the one under discussion. Baldwin, Judge, in delivering the opinion of a majority of the court, said: "A contract of insurance is treated like any other contract; and the same rules of construction must govern it. To construe this policy, we must take our stand-point, where the parties themselves stood, consider each and all of its parts; and if there are conflicts in the different provisions of the policy, then the facts and circumstances surrounding the transaction must determine how the parties themselves understood it, and that construction must prevail. The point once settled that the interest insured was a mechanic's lien, and the conditions of this policy such, that the assured or his assignee is required before the commencement of his suit upon the policy to prove to the company the value of the interest that he may have in the building insured, and if this cannot be done in the ordinary proceeding in courts, necessary to be pursued, or if such proof cannot be made in a legitimate way within one year after loss, then this condition, requiring suit to be commenced within one year, is rendered inoperative by the parties themselves."

*Longhurst* v. *The Star Insurance Co.*, 19 Ia. 364, was a similar case, in which Low, Judge, in delivering the opinion of a majority of the court, said: "The defendant in granting a policy upon a mechanic's lien admits that it is an insurable interest. * * If then the company consent to grant a policy upon such an interest, they do so subject to the unavoidable delay in the judicial ascertainment of the value of that interest, if a loss should occur. If with reasonable diligence that value cannot be legally ascertained in time to bring an action on the policy within a year from the date of the loss, then it follows, unless you wish to impute a dishonest

purpose on the part of the company, that in granting such a policy they intended to waive in this class of insurable interests the condition, which limits the right of action on the policy to twelve months. By putting this construction upon the contract of insurance you preserve the upright intent of the company intact. Whereas, if you put the other construction upon it, you by implication charge, or perhaps it would be better to say judicially determine, that the company granted a policy for a valuable consideration paid, which, at the time they had reason to believe, would be no risk to them, and no protection to the insured, and thereby obtained money for themselves under false pretences. True charity thinketh no evil. It is therefore right for us to presume, that it was the honest intent of the company to insure the plaintiff's mechanic's lien upon the premiums specified against loss by fire, and upon the other hand, that it was the expectation of the insured in paying the required premiums, that this policy would cover the loss, and give him the requisite protection. It is the business of the court in construing the contract to give effect if possible to the real intent and expectations of the parties. That can only be done in this case by holding, that the fifteenth condition of the policy under discussion is not applicable to this particular class of insurable interest, and that when the defendant consented to take risks of this kind, it either intended to waive the limitation, or have it to commence running from the date that the value of the mechanic's lien should be judicially ascertained."

We do not think in such cases there is a waiver of the clause in the policy, but that the whole contract construed together shows the intent of the parties, that the period of limitation agreed upon by the parties should commence to run from the time the right of action on the policy accrues. We hold that where a condition in a policy of insurance provides for an *indefinite* period to elapse before suit shall be brought on the policy, and

Syllabus 4.

that no suit shall be brought, until the thing so provided for is done, to accomplish which may take more than six months without the fault of either of the parties to the contract, and the condition further provides, that no suit on the policy shall be maintained, unless commenced within six months next after the loss shall occur, the intent of the parties to the contract is, that the six months limitation should commence to run when the cause of action accrues, and not before.

In the case at bar, the policy provides, that the loss should be paid sixty days after due notice and proofs of the same should have been made by the assured, and received at the said company's office in accordance with the terms and provisions of said policy, unless the property should be replaced, or the company should have given notice of their intention to rebuild or repair the damaged premises. The ninth condition of the policy provides, as follows:

"Persons sustaining loss or damage by fire shall forthwith give notice of said loss to the company, and as soon thereafter as possible render a particular account of such loss signed and sworn to by them, stating whether any, and what, other insurance has been made on the same property, giving copies of the written part of all policies thereon, also the actual cash value of the property, and their interest therein, for what purpose and by whom the building insured, or containing the property insured, and the several parts thereof were used at the time of the loss; when and how the fire originated; and shall also produce a certificate under the hand and seal of a magistrate or notary public (nearest the place of the fire, not concerned in the loss, as a creditor or otherwise, nor related to the assured) stating that he has examined the circumstances of the assured and verily believes, that the assured has without fraud sustained loss on the property insured to the amount which such magistrate or notary public shall certify. The assured shall, if required, submit to an examination or an examination under oath by

any person appointed by the company, and subscribe to such examinations when reduced to writing, and shall also produce their books of account and other vouchers, and exhibit the same for examination at the office of the company, and permit extracts and copies thereof to be made; the assured shall also produce certified copies of all bills and invoices, the originals of which have been lost, and shall exhibit all that remains of the property which was covered by this policy, damaged or not damaged, for examination, to any person or persons named by the company.

"When personal property is damaged, the assured shall forthwith cause it to be put in order, assorting and arranging the various articles according to their kinds, separating the damaged from the undamaged, and shall cause an inventory to be made and furnished to the company of the whole, naming the quantity, quality and cost of each article. The amount of sound value and damaged shall then be ascertained by appraisal of each article by competent persons (not interested in the loss as creditors or otherwise, nor related to the assured, or sufferers) to be mutually appointed by the assured and the company, their report in writing to be made under oath before any magistrate or properly commissioned person, one half of the appraisers' fees to be paid by the assured.

"The company reserves the right to take the whole or any part of the articles at their appraised value; and until such proofs and declarations and certificates are produced, and examinations and appraisals permitted by the claimant, the loss shall not be payable."

The insurance was on a two-story frame building operated by steam, and used as a manufactory of wagons, buggies, carriages and agricultural implements, and the machinery, shafting, belting, engine and tools therein contained, and the stock manufactured, unmanufactured and in process of manufacture, therein contained.

The ninth condition of the policy further provides as follows:

1880
Special Term.

Barber
v.
F & M Ins. Co
of Wheeling.

"In case differences shall arise touching any loss or damage, after proof thereof has been received in due form, the matter shall, at the written request of either party, be submitted to impartial arbitrators, whose award in writing shall be binding on the parties as to the amount of such loss or damage, but shall not decide the liability of the company under this policy; *and provided further*, that it shall be optional with the company to repair, rebuild, or replace the property lost or damaged with other of like kind and quality, within a reasonable time, giving notice of their intention so to do within thirty days after receipt of proofs herein required; and in case this company elect to rebuild, the assured shall, if required, furnish plans and specifications of the buildings destroyed."

The twelfth condition provides as follows:

"It is furthermore expressly provided and mutually agreed, that no suit or action against this company for the recovery of any claim by virtue of this policy shall be sustainable in any court of law or chancery, until after an award shall have been obtained, fixing the amount of such claim in the manner above provided, nor unless such suit or action shall be commenced within six months next after the loss shall occur."

Here is an indefinite period, within which the arbitrators may fix the amount of loss or damage, a period, which without the fault of either of the parties to the contract might extend beyond six months. If it did, it could not be said in the absence of proof that the defendant had *waived* the conditions, because on the contrary it might have done all in its power to have the arbitrators act as speedily as possible. It would alter the case, if the condition did not declare that suit could not be maintained "until after an award had been obtained fixing the amount of such claim." Some of the authorities have given a literal construction to similar conditions containing provisions for arbitrators; but in the absence of a condition denying the right to bring suit before the

award. Some of the authorities, give force to all the provisions, as they find them ; but in all the cases I have examined, except the Illinois case, there was some specified definite time provided for in the contract, within which suit might be brought. To give the construction contended for by the company, there is no time given in the policy within which the plaintiff might bring his suit. He could not bring it before the award ; he is expressly denied that right. The award might not be made until the six months had elapsed ; he could not then bring his suit. The same reasoning we have applied to the arbitrators' clause, applies to the others referred to, because there is no definite time fixed in any of them, when suit might have been brought. We would be compelled either to hold that the condition is void, as against public policy, or to hold, as we do, that the true construction of the policy is, that the six months provided in the condition did not commence to run, until the right of action accrued on the policy. We could not hold that the company intended to do wrong, and make a void condition, unless there was no escape from such a conclusion."

MOORE, J.—I differ with my brothers in the foregoing view, believing as I do, that all the provisions of the twelfth section should be considered together, and if it is not impossible to reconcile them, they should be held valid ; but if, per-chance, it happens, that without fault of the plaintiff and defendant, the plaintiff having done all within his power to obtain the award, but fails to obtain it within six months next after the loss occurs, that then the law implies a waiver. Yet I am pleased that a majority of the Court have come to the conclusion it has, because it is an equitable view, and operates no wrong to either party.

Judgment of the municipal court must be affirmed with costs and $30.00 damages ; and the case is remanded to the municipal court to be proceeded in according to the

1880
Special Term.

Barber
v.
F. & M. Ins. Co.
of Wheeling.

principles laid down in the foregoing opinion, and according to law.

THE OTHER JUDGES CONCURRED.

JUDGMENT AFFIRMED.